[Cite as *State v. Gales*, 2016-Ohio-588.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 102809**

**STATE OF OHIO**

PLAINTIFF-APPELLEE
and CROSS-APPELLANT

vs.

**MAURICE GALES**

DEFENDANT-APPELLANT
and CROSS-APPELLEE

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-588092-A

**BEFORE:**  S. Gallagher, J., Keough, P.J., and Boyle, J.

**RELEASED AND JOURNALIZED:**  February 18, 2016

**ATTORNEY FOR APPELLANT**

Myron P. Watson
614 W. Superior Avenue
Suite #1144
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Daniel T. Van
        Mary Weston
Assistant Prosecuting Attorneys
Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio    44113

SEAN C. GALLAGHER, J.:

{¶1} Appellant Maurice Gales appeals his convictions for rape and kidnapping. The state of Ohio has filed a cross-appeal challenging the court's imposition of the sentence under 2011 Am.Sub.H.B. No. 86 ("H.B. 86"). Upon review, we affirm the judgment of the trial court.

{¶2} On October 7, 2014, appellant was charged under a two-count indictment with rape and kidnapping. The alleged crimes occurred on August 13, 1994.

{¶3} Appellant filed a motion to dismiss based on preindictment delay that was denied by the trial court after a hearing. In its opinion, the trial court determined that appellant had not established substantial prejudice. The court stated: "While defendant claims he suffered prejudice due to [the] inability to locate witnesses and the absence of [the] 911 audio, the court finds these arguments speculative at best and wholly insufficient to establish actual and substantial prejudice." Further, the court determined that even if appellant could have shown prejudice, the state satisfied its burden of producing evidence of a justifiable reason for the delay. The court stated: "Not until 2013 did the state receive DNA evidence purportedly linking defendant to the victim's 1994 rape kit. The reasons for the delay were investigative, not an attempt to gain a tactical advantage or the result of negligence or error in judgment."

{¶4} The case proceeded to a jury trial. The victim, who at the time was 17 years old, testified that she knew appellant only by his nickname and that she had his pager number. On August 13, 1994, she went on a double date with appellant and invited him back to her apartment. At some point, she decided to change into her nightgown because it was getting late, she was ready to go to bed, and she wanted to signal that it was time for appellant to leave. She testified that she remembered kissing appellant, but when he began touching her and doing more than she was comfortable with she told him "no." She testified that she ended up on the floor

with appellant on top of her, raping her, while she was yelling and screaming. She stated her nightgown was torn and she had pulled on the curtains. She testified that when appellant left, she called 911, and that appellant came back in, heard her on the phone, and then he ran off for good.

{¶5} The victim further testified that after calling the police, the father of her child, Z.T., arrived at her apartment for a visit, along with his cousin, and she told him what happened. Z.T. testified that when he knocked on the window to the victim's apartment, he saw the victim sitting down, but she did not respond. He then went to the door and was let in. As soon as he was let into the apartment, the victim started crying and he asked the victim what had happened. The victim told him that she had just been raped and that she had called the police.

{¶6} After the police arrived, the victim told them what happened and provided a description of the suspect and a pager number. Z.T. provided a false name to the police because he had an outstanding warrant. The responding officer testified that he got a description of the suspect and of his vehicle.

{¶7} A neighbor of the victim's at the time of the incident testified at trial that he was in bed with his wife and heard some banging and a woman screaming. He looked outside and saw a male, whose description matched that provided by the victim, pounding on the window of an apartment. The neighbor saw the male's face before he took off. The neighbor identified the male as the appellant in the courtroom.

{¶8} The victim was taken to a hospital and examined. The nurse who performed the examination testified that the victim was "somewhat tearful," and the nurse noted tenderness during the examination.

**{¶9}** A few days later, the victim looked through photographs at the police station but did not recognize anyone. The case went cold.

**{¶10}** On August 30, 2012, the rape kit was submitted to the Ohio Bureau of Criminal Investigation for DNA testing. The testing found a DNA profile consistent with appellant.

**{¶11}** A photo array, which contained a photo of the appellant, was presented to the victim by a blind administrator. The victim selected a photo of a person who looked familiar to her, but she was unsure if it was her attacker. Although the photo was not appellant, the victim indicated that none of the victims in the photo array was a consensual sex partner.

**{¶12}** Appellant was found guilty of both rape and kidnapping. Following merger of the offenses and the state's election to proceed to sentencing on the rape count, the trial court sentenced appellant to a prison term of ten years. The court imposed five years of mandatory postrelease control and designated appellant as a sexually oriented offender.

**{¶13}** Appellant timely filed this appeal. He raises eight assignments of error for our review. The state filed a cross-appeal, which raises one assignment of error for review.

**{¶14}** Under his first assignment of error, appellant claims the trial court erred in denying his motion to dismiss based on preindictment delay.

**{¶15}** The statute of limitations for a criminal offense is a defendant's primary protection against overly stale criminal charges. *United States v. Marion*, 404 U.S. 307, 322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). However, both the Due Process Clause of the Fifth Amendment and Article I, Section 16, of the Ohio Constitution afford limited protection against preindictment delay. *State v. Adams*, Slip Opinion No. 2015-Ohio-3954, ¶ 97. As such, this court has recognized that claims of preindictment delay must be evaluated in terms of fundamental conceptions of due process and fundamental justice. *See State v. Owens*, 8th Dist. Cuyahoga

No. 102276, 2015-Ohio-3881, ¶ 8; *State v. Jones*, 2015-Ohio-2853, 35 N.E.3d 606, ¶ 47 (8th Dist.).

**{¶16}** A defendant claiming a due process violation based on preindictment delay "must present evidence establishing substantial prejudice to his right to a fair trial." *Id*. at ¶ 98. There is no presumption of prejudice when the preindictment delay exceeds a particular length of time. *Id*. However, a delay in commencing prosecution will not be justified when the state uses the delay to gain a tactical advantage or through negligence or error ceases its investigation and then later, without new evidence, decides to prosecute. *Id*., citing *Marion* at 324; *State v. Luck*, 15 Ohio St.3d 150, 158, 472 N.E.2d 1097 (1984).

**{¶17}** When a defendant makes a preliminary showing of substantial prejudice, the burden shifts to the state to present evidence of a justifiable reason for the delay. *Adams* at ¶ 99. The Ohio Supreme Court has stated that a defendant's burden to show preindictment delay violated due process is "nearly insurmountable," in light of the fact that "proof of prejudice is always speculative." *Id*. at ¶ 100.

**{¶18}** Appellant makes the general claim that he was prejudiced by the loss of 911 or radio broadcast tapes and the fading memories of two key witnesses. It is well settled that "the possibility that memories will fade, witnesses will become inaccessible, or evidence will be lost is not sufficient to establish actual prejudice." *Adams*, Slip Opinion No. 2015-Ohio-3954, at ¶ 105. Further, a defendant must explain how the missing evidence has impaired his defense. *State v. Smith*, 8th Dist. Cuyahoga No. 100501, 2014-Ohio-3034, ¶ 28. Substantial prejudice is not established when a defendant fails to explain the exculpatory value of missing evidence. *Adams* at ¶ 103-105 (finding defendant failed to show actual prejudice where defendant failed to explain how missing evidence might be exculpatory).

{¶19} Although the victim may not have remembered all of the details concerning how she met appellant or how the date was set up, she recalled the night of the rape in detail. The record reflects that she recalled the double date with appellant and the events that transpired at her apartment surrounding the alleged rape. She also immediately reported the rape, and she provided the police with a description of her attacker along with his nickname and pager number. Other witnesses in the case were also able to provide details concerning their observations from the night of the alleged rape. Physical evidence, including photographs, a rape kit, and the victim's nightgown were retained. Appellant has not demonstrated the loss of any exculpatory evidence in this case.

{¶20} Appellant also claims that he testified at the motion hearing that the police had his pager number, that he was interviewed by police in 1994, that he told them he had consensual sexual intercourse with the victim, and that he never heard from the police again. Appellant conceded that there was nothing in the police report indicating that he had been interviewed by the police. Although appellant claims the original detective is no longer available and the state could not prove that a follow-up report was not created, he may not rely on speculation or vague assertions of prejudice. Indeed, a defendant retains the burden of demonstrating substantial prejudice. *Adams* at ¶ 98-101.

{¶21} When a defendant fails to meet his burden to show substantial prejudice, it is unnecessary to consider the reasons for the preindictment delay. *Adams*, Slip Opinion No. 2015-Ohio-3954, at ¶ 107. Nevertheless, there is nothing in the record to suggest that the state used the delay to gain a tactical advantage. Also, this is not a case where the state through negligence or error ceased its investigation and then later, without new evidence, decided to prosecute.

{¶22} The record shows that the victim testified that she only knew the nickname of her alleged attacker. She looked through photos for hours to no avail. The case went cold. New evidence was uncovered linking appellant to the crime when the victim's rape kit was submitted for DNA testing in 2012. Thus, although the police may have ceased any active investigation in 1994, the delay in this case was not unjustifiable.

{¶23} We also recognize that cases involving this court's recent precedent in which prejudice has been found are distinguishable. *See Jones*, 2015-Ohio-2853, 35 N.E.3d 606 (8th Dist.); *State v. Mack*, 8th Dist. Cuyahoga No. 100965, 2014-Ohio-4817.[1] In *Jones*, there was a lack of physical or forensic evidence, the loss of a witness who was present in the home at the time of the alleged crime and who the defense claimed would have corroborated his claims, and the state's failure to take action for a substantial period of time despite the identity of the alleged perpetrator always being known. In *Mack*, there was a lack of physical evidence, multiple witnesses were unavailable, and the defendant was being prosecuted for a crime he allegedly committed as a juvenile despite his identity always being known. Unlike those cases, appellant herein failed to demonstrate actual prejudice and there is nothing in the record to suggest that appellant has been deprived of due process or fundamental justice

{¶24} This case is more akin to *Owens*, 8th Dist. Cuyahoga No. 102276, 2015-Ohio-3881. In *Owens*, the victim gave a statement providing the first name of her assailant. *Id*. at ¶ 14. Years later, after the rape kit was submitted for testing and a positive result was obtained, Owens was indicted. There were no lost witnesses who could have corroborated the defense, and there was nothing to show prejudice in a manner consistent with

---

[1]  We note that these cases were decided prior to the Ohio Supreme Court's decision in *Adams.*

the *Jones* case. *Id*. at ¶ 14. No abuse of discretion was found in the trial court's decision to deny the motion to dismiss. *Id*. at ¶ 15.

{¶25} Upon our review, we find the trial court did not abuse its discretion in determining that appellant had not established substantial prejudice and by denying the motion to dismiss. Appellant's first assignment of error is overruled.

{¶26} Under his second assignment of error, appellant claims he was denied his right to a fair trial because the state failed to disclose prior to trial that a state witness might be able to identify appellant in court.

{¶27} The record reveals that the neighbor of the victim testified that on the night in question, he heard some banging and a woman screaming, he looked outside and saw a male pounding on the window of an apartment, and he saw the male's face before the male took off running. The neighbor provided a description of the suspect and what he was wearing to the police. However, he did not make any identification of the suspect prior to trial.

{¶28} The neighbor was able to identify the male as the appellant in the courtroom. On cross-examination, the neighbor testified that a couple weeks before trial he told the prosecutor that he could make an identification of the person he saw on the night in question. Defense counsel requested a mistrial because the prosecutor had not disclosed that the witness might be able to make an identification.

{¶29} Even if this amounted to a discovery violation, a trial court is permitted to make such order as it deems "just under the circumstances." Crim.R. 16(E)(3). The overall purpose of the discovery rules "is to produce a fair trial." *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 3, 511 N.E.2d 1138 (1987). Under the circumstances herein, a mistrial was not warranted.

**{¶30}** An in-court identification generally will be upheld where the totality of the circumstances demonstrates that the in-court identification was reliable. *See State v. Monford*, 190 Ohio St.3d 35, 2010-Ohio-4732, 940 N.E.2d 634, ¶ 58. Here, the witness's in-court identification was based on his own observations and memory. The witness testified that he was about 25 feet from the male and saw his face, and the witness was able to provide a description of the male to the police. The in-court identification was made under oath and subject to cross-examination. During the cross-examination of the witness, defense counsel was able to elicit testimony concerning the witness's failure to inform anyone earlier that he could make an identification and challenge the witness's recollection. Further, defense counsel was able to point to inconsistencies from the trial during closing argument and suggest that the person knocking at the window could have been Z.T. Finally, even if the nearly 20-year delay was considered to impact the reliability of the identification, we do not find that the identification, or the lack of a curative instruction, denied appellant his right to a fair trial. Appellant's second assignment of error is overruled.

**{¶31}** Under his third assignment of error, appellant claims the trial court allowed the state to elicit testimony from a witness that constituted hearsay and violated his right of confrontation. The challenged testimony involved the testimony of Z.T., who is the father of the victim's child.

**{¶32}** The victim testified that Z.T. arrived at the apartment within minutes of the rape. The police had not yet arrived. She testified that when she first heard the knock, she thought it might be the police and was also frightened that it could be the suspect returning to the scene. Z.T. testified that as soon as he got into the apartment, the victim immediately started crying and

he asked what happened. She told him that she had just been raped and that she had called the police. The victim's statements were excited utterances under Evid.R. 803(2).

{¶33} Evid.R. 803(2) allows a hearsay statement to be admitted into evidence if it relates "to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." A declaration does not lose its character as an excited utterance when given in response to questioning that "(1) is neither coercive nor leading, (2) facilitates the declarant's expression of what is already the natural focus of the declarant's thoughts, and (3) does not destroy the domination of the nervous excitement over the declarant's reflective faculties." *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 43, quoting *State v. Wallace*, 37 Ohio St.3d 87, 90-91, 524 N.E.2d 466 (1988), paragraph two of the syllabus. Because these requirements are met in this case, the statements were admissible as excited utterances. Further, because the victim testified and was subject to cross-examination at trial, there was no violation of the Confrontation Clause. Appellant's third assignment of error is overruled.

{¶34} Under his fourth assignment of error, appellant claims the trial court erred by limiting the cross-examination of Z.T. about his prior conviction for voluntary manslaughter. Appellant argues that the witness opened the door to inquiry into the details of the conviction by denying his guilt. However, the record reflects that Z.T. conceded that he pled guilty to the offense and he testified that he served time in prison. Upon being further questioned, he indicated that he pled guilty because he was advised to do so and he denied killing anyone.

{¶35} Generally, cross-examination of a witness on his prior convictions is limited to establishing the existence of the prior conviction and the name of the crime. *See State v. Robb*, 88 Ohio St.3d 59, 71, 2000-Ohio-275, 723 N.E.2d 1019; Evid.R. 609. Here, the witness

admitted to his prior conviction and the facts of that conviction had no relevance in this case. The trial court acted within its discretion in limiting the testimony. Appellant's fourth assignment of error is overruled.

{¶36} Under his fifth assignment of error, appellant claims the trial court erred when it allowed the state to introduce hearsay statements from the victim's friend, L.G., who went on the double date and then went home. L.G. testified that a few days later she learned something had happened to the victim and she spoke to the victim about it. She described the victim as "scared" and "upset." L.G. further testified that she was upset because "it happened to [L.G.]'s sister" and that she wished she had gone to the apartment with the victim at the end of the date.

{¶37} Appellant contends that the witness's testimony amounted to inadmissible hearsay and that the questioning was used to bolster the fact that the victim had reported to her friend that she had been raped. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Our review of the transcript reflects that the witness testified to the victim's demeanor and her own personal reaction to learning what happened to the victim. The victim's demeanor following the incident was relevant, and we find no prejudice from the admission of the testimony because several witnesses, including the victim, testified that the victim was upset. Further, even if we were to find that the trial court abused its discretion in the admission of the testimony, we find that the error is harmless. Appellant's fifth assignment of error is overruled.

{¶38} Under his sixth assignment of error, appellant claims the state committed prosecutorial misconduct by insinuating that the defense investigator was not licensed, when a license is not statutorily required. Appellant asserts that although R.C. 4749.03 lists the requirements for private investigator and security guard provider licenses, attorneys are permitted

to hire non-licensed investigators in connection with litigation. Appellant argues that the prosecutor's questioning was improper and prejudicial.

{¶39} The record reflects that upon objection, the trial court provided a curative instruction to the jury and instructed them to disregard the question. The trial court also informed the jury that the statements of counsel are not evidence and struck the prosecutor's remark from the record. Even if we assume that the prosecutor's questioning was improper, any error was corrected by the trial court's instruction to disregard, which the jury is presumed to follow. *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 154. There is no basis to conclude that the jury did not follow the trial court's instruction. Accordingly, appellant has not demonstrated prejudice, and we are unable to find that the prosecutor's question deprived appellant of a fair trial. The sixth assignment of error is overruled.

{¶40} Under his seventh assignment of error, appellant claims the trial court abused its discretion when it precluded a defense witness from testifying. Defense counsel wished to call the victim's grandmother as a witness to show the victim had been less than truthful regarding the circumstances under which she left her family residence, which was two years before the alleged rape, and the victim's relationship with her child's father at that time. The trial court determined the proffered testimony was irrelevant to the case. Outside the presence of the jury, the trial court permitted defense counsel to voir dire the grandmother. The trial court was not persuaded to change its ruling.

{¶41} A trial court has broad discretion to admit or exclude evidence. *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 111. An admissibility ruling will not be reversed unless there has been an abuse of discretion and the defendant has thereby suffered material prejudice. *Id*. Here, the proffered testimony of the victim's

grandmother was not relevant to the elements of the crime and was nothing more than extrinsic evidence being used to attack the victim's credibility. The exclusion of this testimony did not cause material prejudice, and the trial court did not abuse its discretion. Appellant's seventh assignment of error is overruled.

{¶42} Under his eighth assignment of error, appellant claims the trial court abused its discretion by allowing a flight instruction because he claims there was insufficient evidence to support the instruction.

{¶43} An accused's flight is admissible as evidence of consciousness of guilt. *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, 840 N.E.2d 151, ¶ 161. The decision whether to issue a flight instruction is a matter within the trial court's discretion. *State v. Dunn*, 8th Dist. Cuyahoga No. 101648, 2015-Ohio-3138, ¶ 48. In this case, there was evidence to warrant the instruction. The victim testified that after the rape, the rapist ran off from her apartment. The neighbor testified he overheard screaming, went outside, and saw the male who had been pounding on the glass run away from the scene. Finding no abuse of discretion, we overrule the eighth assignment of error.

{¶44} The state raises one cross-assignment of error, claiming the trial court erred in imposing appellant's sentence under H.B. 86, which was in effect at the time appellant was sentenced. The state's position is that appellant should have been sentenced under the law that was in effect at the time of the offense.

{¶45} The state acknowledges that this court has already decided this issue and determined that a defendant in appellant's position should be sentenced under H.B. 86, which was in effect at the time of sentencing. *See, e.g., State v. Thomas*, 8th Dist. Cuyahoga No. 101202, 2015-Ohio-415, ¶ 41-49; *State v. Bryan*, 8th Dist. Cuyahoga No. 101209,

2015-Ohio-1635, ¶ 5; *State v. Kent*, 8th Dist. Cuyahoga No. 101853, 2015-Ohio-1546, ¶ 4-5.[2] The state seeks to preserve its position that Am.Sub.S.B. No. 2, Section 5, 146 Ohio Laws, Part IV, 7136, has not been repealed and remains valid law.

**{¶46}** In accordance with this court's precedent, we affirm the trial court's judgment sentencing appellant under H.B. 86 and reject the state's view.

**{¶47}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.       The       court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.   The defendant's conviction having been affirmed, any bail pending appeal is terminated.   Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SEAN C. GALLAGHER, JUDGE

MARY J. BOYLE, J., CONCURS;
KATHLEEN ANN KEOUGH, P.J., CONCURS IN PART AND CONCURS IN JUDGMENT ONLY IN PART WITH SEPARATE OPINION

KATHLEEN ANN KEOUGH, P.J., CONCURRING IN PART; CONCURRING IN JUDGMENT ONLY IN PART:

---

[2] The Ohio Supreme Court has granted discretionary review in all three cases, with *Bryan* and *Kent, discretionary appeal allowed,* 144 Ohio St.3d 1407, 2015-Ohio-4947, 41 N.E.3d 446, being held for the court's decision in *Thomas, discretionary appeal allowed,* 143 Ohio St.3d 1463, 2015-Ohio-3733, 37 N.E.3d 1249.   We shall continue to adhere to the precedent in this court pending resolution of the issue by the Ohio Supreme Court.

**{¶48}** I concur with the majority's decision regarding Gales's appeal but, in light of my concurring opinion in *State v. Bryan*, 8th Dist. Cuyahoga No. 101209, 2015-Ohio-1635, I respectfully concur in judgment only regarding the majority's disposition of the state's cross-appeal.