[Cite as *State v. Worley*, 2016-Ohio-2722.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103105**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## PEREZ WORLEY

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-587709-B

**BEFORE:** S. Gallagher, J., E.T. Gallagher, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** April 28, 2016

**ATTORNEYS FOR APPELLANT**

Michael J. Goldberg
323 Lakeside Avenue West
Suite 450
Cleveland, Ohio    44113

Joseph V. Pagano
P.O. Box 16869
Rocky River, Ohio    44116

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By:    Brent Kirvel
Assistant Prosecuting Attorney
Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio    44113

SEAN C. GALLAGHER, J.:

**{¶1}** Perez Worley appeals his conviction for aggravated murder, with an associated firearm specification, and his indefinite, aggregate sentence of 28 years to life in prison. For the following reasons, we affirm.

**{¶2}** In June 2014, Worley confronted the victim for allegedly snitching on Worley in 2009. An argument and then a physical altercation ensued, but the fight was broken up by others. Sometime after the physical altercation (the time period is not clearly specified in the record), Worley approached and then shot the victim multiple times. Worley immediately fled the scene and absconded for four months. No one heard from Worley during those four months, an abnormal occurrence for his mother, who spoke with him at least a couple of times a month before the shooting.

**{¶3}** Several witnesses circumstantially identified Worley as the shooter, and two witnesses familiar with Worley saw him actually shoot the victim. Before the shooting, Worley was also seen at a local gas station looking angry and holding a firearm. There is disputed evidence whether the codefendant drove Worley away from the scene or they departed separately. The codefendant's alleged involvement in the crime was limited to driving the getaway vehicle. No witness identified the codefendant as the shooter.

**{¶4}** After the evidence was presented at trial, the jury found Worley guilty of aggravated murder. The trial court found him not guilty of retaliation, but guilty of improperly handling a firearm and having a weapon while under disability. Those

sentences were imposed to be served concurrently to the aggravated murder and firearm specification charges. Worley's aggregate sentence is 28 years to life.

{¶5} Worley timely appealed, advancing four assignments of error in which he claims (1) that his conviction is against the sufficiency of the evidence because the state failed to present evidence that Worley purposely caused the death of the victim or acted with prior calculation and design; (2) that his conviction is against the manifest weight of the evidence because of the inconsistencies in the witnesses' testimony; (3) that Worley's trial counsel rendered ineffective assistance — by not waiving Worley's right to a jury trial on the retaliation charge or by stipulating to an "overly broad" flight instruction because it allowed the jury to "consider if Mr. Worley leaving the scene of the crime was caused by consciousness of guilt"; and (4) that the state violated the trial court's pretrial order, which partially granted a motion in limine.

{¶6} We summarily overrule Worley's first, third, and fourth assignments of error. The entirety of Worley's sufficiency of the evidence argument is predicated on the credibility of key witnesses. Credibility is not a factor to consider when reviewing the sufficiency of the evidence, although those concerns will be addressed in our review of the weight of the evidence. *State v. Herring*, 94 Ohio St.3d 246, 253, 2002-Ohio-796, 762 N.E.2d 940.

{¶7} Further, Worley presented only two arguments in support of his ineffective assistance of counsel claim: (1) his trial counsel was ineffective for failing to waive Worley's right to a jury trial; and (2) he was prejudiced by the "overly broad" flight

instruction because it allowed the jury to consider flight as consciousness of guilt. Only the defendant, not his counsel, can waive his right to a jury[1] (*State v. Slaughter*, 2d Dist. Montgomery No. 25215, 2014-Ohio-862, ¶ 56, citing *State v. Adams*, 12th Dist. Butler No. CA2006-07-160, 2007-Ohio-2583, ¶ 74) and an offender's flight is admissible as evidence of consciousness of guilt (*State v. Gales*, 8th Dist. Cuyahoga No. 102809, 2016-Ohio-588, ¶ 43). Trial counsel's performance was not deficient as a matter of law.

{¶8} Finally, with respect to our summary dispositions, Worley argues that the state violated the trial court's order excluding the evidence of the 2009 snitching incident. The trial court held, however, that the state was entitled to introduce evidence of the victim's alleged snitching, at the least to demonstrate the strained relationship between the defendant and the victim. Tr. 29:22-30:6. Thus, the state did not violate the exclusionary order, further demonstrated by the fact that the trial court overruled every objection on that issue at trial.

{¶9} Having offered nothing more than blanket assertions or ones unsupported by the record, we must overrule Worley's first, third, and fourth assignments of error as being without merit.

---

[1]Worley based his argument on the faulty presumption that his counsel failed to discuss the ramifications of a refusal to waive the jury trial on the retaliation charge before that charge was read to the jury. The only claimed error, therefore, is that Worley lacked sufficient legal advice to make an informed decision. Whether Worley was adequately informed of his rights by his counsel presents issues that rely on the contents of conversations between him and his attorney, facts that are outside the record and unreviewable on a direct appeal. *State v. Hoyle*, 8th Dist. Cuyahoga No. 102791, 2016-Ohio-586, ¶ 15.

{¶10}   Turning our attention to the second assignment of error, when reviewing a claim challenging the manifest weight of the evidence, the court, reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541.  Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the exceptional case in which the evidence weighs heavily against the conviction.  *Id.*

{¶11} The weight of the testimony must still be considered by the trier of fact with the ability to view and hear firsthand the witnesses' testimony.  *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.  Although appellate courts are tasked with sitting as a "thirteenth" juror, "the demeanor of witnesses, the manner of their responses, and many other factors observable by [a trier of fact] * * * simply are not available to an appellate court on review."  *State v. Bailey*, 8th Dist. Cuyahoga No. 97754, 2012-Ohio-3955, ¶ 12.  It is for this reason that reversing a conviction as being against the manifest weight of the evidence is only reserved for instances in which a miscarriage of justice would result.  *See, e.g., State v. Kozlosky*, 195 Ohio App.3d 343, 2011-Ohio-4814, 959 N.E.2d 1097, ¶ 27 (8th Dist.) (the jury clearly lost its way by not finding the defendant acted in self-defense).

{¶12} The state's theory was that Worley and the victim physically fought, the fight was broken up, and the parties were separated for a short period of time. Worley then approached the victim from behind to execute him. The victim turned before being shot. As the state further argued, Worley's animosity toward the victim was motivated by his belief that the victim snitched on Worley in 2009. Worley contends that the witnesses' credibility issues weighed against the conviction to such a degree that the jury clearly lost its way and created a miscarriage of justice.

{¶13} Aggravated murder is defined as purposely causing the death of another with prior calculation and design. Prior calculation and design, as the jury was instructed in this case, is further defined as "the purpose to cause the death was reached by a definite process of reasoning in advance of the homicide, which process of reasoning must have included a mental plan involving studied consideration of the method and the means and/or instrument with which to cause the death of another." *State v. Coley*, 93 Ohio St.3d 253, 267, 2001-Ohio-1340, 754 N.E.2d 1129, citing 4 *Ohio Jury Instructions*, Section 503.01 (1997 and Supp.2000).

{¶14} In this case, Worley argues that several of the witnesses inconsistently testified and that Worley relinquished his grudge against the victim. The state's evidence of prior calculation and design was, therefore, not credible. At trial, the state also argued, based on the presented evidence, that the fight between Worley and the victim ceased and then a period of time elapsed allowing Worley to formulate his plan of attack.

**{¶15}** "Whether a defendant acted with prior calculation and design is determined on a case-by-case basis, following an analysis of the specific facts and evidence presented at trial." *State v. Hicks*, 8th Dist. Cuyahoga No. 102206, 2015-Ohio-4978, ¶ 41, citing *State v. Orr*, 8th Dist. Cuyahoga No. 100841, 2014-Ohio-4680, ¶ 77. "Prior calculation and design" can be proven

> from the circumstances surrounding a murder in several ways, including: (1) "evidence of a preconceived plan leading up to the murder"; (2) "evidence of the defendant's encounter with the victim, including evidence necessary to infer that the defendant had a preconceived notion to kill regardless of how the events unfolded" or (3) "evidence that the murder was executed in such a manner that circumstantially proved the defendant had a preconceived plan to kill," such as where the victim is killed in a cold-blooded, execution-style manner.

*Hicks* at ¶ 40, citing *Orr* at ¶ 75, citing *State v. Dunford*, 11th Dist. Ashtabula No. 2009-A-0027, 2010-Ohio-1272, ¶ 53; *State v. Trewartha*, 165 Ohio App.3d 91, 2005-Ohio-5697, 844 N.E.2d 1218 (10th Dist.); *State v. Hough*, 8th Dist. Cuyahoga No. 91691, 2010-Ohio-2770, ¶ 19. Some other factors to consider in determining the existence of "prior calculation and design" include "whether the defendant and the victim knew each other and, if so, whether the relationship was strained; whether there was thought or preparation in choosing the murder weapon or murder site; and whether the act was 'drawn out' or 'an almost instantaneous eruption of events.'" *Id.* at ¶ 41, citing *State v. Taylor*, 78 Ohio St.3d 15, 19, 1997-Ohio-243, 676 N.E.2d 82.

**{¶16}** The witnesses' credibility regarding the strained relationship between Worley and the victim is but one factor to consider in making the "prior calculation and design" determination. Worley has not addressed the fact that witnesses testified that the

fight between the victims was broken up for a short period of time, at least as much time as it takes for someone to walk approximately 20 feet by one account, before the shooting took place. In other words, the shooting was not instantaneous. *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 38, quoting *State v. Cotton*, 56 Ohio St.2d 8, 381 N.E.2d 190 (1978), paragraph one of the syllabus.

{¶17} A short period of time between the fight and the murder has been deemed a sufficient period of time that an act can be considered to be done with prior calculation and design. *Taylor*. In *Taylor*, the defendant and his girlfriend were patronizing a bar one evening when the girlfriend's "ex," the victim, entered. Disputed evidence painted two pictures: either the victim sat quietly in the corner (according to disinterested patrons) or was loud, boisterous, and attempted to humiliate the defendant (according to the defendant and his friends). The victim and the defendant verbally fought about a song on the jukebox. Angered, the defendant immediately walked back to his table and told his group they were leaving. On his way out, the defendant shot the victim several times. The Ohio Supreme Court held that prior calculation and design was based on the reasonable inference that the defendant consciously planned to murder the victim, forming the requisite decision in the time that transpired between the verbal altercation and the murder. *Id.* The facts of the current case are analogous to those of *Taylor*.

{¶18} When considering the totality of the circumstances, we cannot determine that the jury lost its way or created a miscarriage of justice in finding Worley guilty of aggravated murder. Worley and the victim had a strained relationship. Although the

witnesses vacillated on the degree of that strain, the evidence when considered as a whole demonstrated that Worley harbored a grudge at least at some level. Worley was angry and confronted the victim because Worley believed the victim had snitched in a 2009 case that resulted in an acquittal. The two men fought, but that fight was broken up and the parties were able to step away. The murder was not an instantaneous occurrence. Further, the evidence demonstrated that Worley approached the victim from behind, and the victim turned before being executed in a deliberate manner. Other testimony established that Worley was angry and armed himself even before his encounter with the victim. Thus, it can also be reasonably inferred from the evidence presented that Worley conceived of a plan to murder the victim before the initial encounter regardless of how the events unfolded when Worley initiated the encounter. The jury reasonably inferred prior calculation and design based on the credible evidence presented at trial.

**{¶19}** Notwithstanding the prior calculation and design, Worley contends that the witnesses' credibility undermined their identification of the shooter.[2] There were two witnesses to the shooting, one of those being the codefendant. Although one of the key witnesses identified Worley, he indicated upon cross-examination that the victim was shot

---

[2]Worley contends that a detective "coached" the key witness into testifying that he witnessed the shooting because the witness made a contrary statement to the police immediately after the shooting, at one point indicating he was not present for the shooting and at another he was present. During the investigation, the detective thought the witness was afraid to make a truthful statement because others confirmed that the witness saw the shooting, and the detective asked the witness for further information. The witness's statement to police contained both statements: that he walked off only to return after the shooting and that he witnessed the shooting. The detective and the witness were both cross-examined on this issue at trial.

from behind. The medical examiner explained that the victim had been shot in the side, and not in the back. Although seemingly contradictory, the discrepancy is minor based on the totality of the evidence. That witness testified that the victim turned as Worley approached from behind before being shot. The witness did not actually say that the victim was shot in the back. When considered as a whole, the statement elicited on cross-examination does not directly contradict the witness's other testimony to the point of undermining the whole of his testimony.

{¶20} Further, although several witnesses disagreed and presented conflicting testimony regarding Worley's clothing that night — some claimed he was wearing a white T-shirt, others thought Worley wore all white, while another confusingly thought Worley wore a white T-shirt and black pants — those inconsistencies are less compelling than the fact that the eyewitnesses to the shooting personally knew Worley. The clothing identification explained Worley's actions based on the other witnesses who did not personally know Worley. All those witnesses universally testified, however, that Worley wore a white T-shirt. For example, the witness placing Worley at the gas station with the gun before the encounter only testified that he wore a white T-shirt, wholly consistent with the other witnesses.

{¶21} Finally, Worley attacks the credibility of the codefendant, claiming that he did not see the victim actually get shot and lied about his involvement in the crime. After reviewing the codefendant's statements, we find he testified to seeing Worley shoot the victim. The codefendant merely clarified that he could not see what happened to the

victim after the shooting, i.e., he could not see the victim lying on the ground. That statement does not contradict his earlier claim to have witnessed the shooting. Further, the codefendant allegedly attempted to talk other witnesses into downplaying his involvement in Worley's actions because several witnesses identified the codefendant as Worley's getaway driver. The codefendant claimed to have left in a separate vehicle and had voluntarily made himself available to the police immediately after the shooting, hearing talk of his being implicated in the murder. The fact that the codefendant attempted to downplay his involvement to avoid conspiracy charges is not sufficient to discredit the whole of his testimony. The jury was free to consider the codefendant's actions in weighing his testimony, which did not materially differ from other accounts, and no other basis to discredit the codefendant's testimony has been provided.

{¶22} As a result, we cannot find that the discrepancies between, and individually in, the testimony of the witnesses rise to the level of creating a manifest miscarriage of justice. *See, e.g., State v. Hill*, 8th Dist. Cuyahoga No. 99819, 2014-Ohio-387, ¶ 32 (although there was conflicting testimony regarding the shooter, all the eyewitnesses identified the defendant). The jury is free to weigh the credibility of a witness, and as a whole, nothing demonstrates that the jury lost its way in convicting Worley of aggravated murder. In addition to all the evidence presented at trial, including the discrepancies identified on appeal, the jury was also free to infer consciousness of guilt from Worley's act of absconding for four months, immediately after the shooting and until apprehended

by law enforcement. Considering the totality of the evidence, we do not find that the aggravated murder conviction is against the manifest weight of the evidence.

{¶23} Worley also independently argues that the counts for which he was found guilty, but that merged with the aggravated murder count, were against the weight of the evidence. We need not address those claims because of the merger. For the purposes of R.C. 2941.25, a "'conviction' consists of a guilty verdict *and* the imposition of a sentence or penalty." (Emphasis sic.) *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 12, citing *State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, ¶ 135. The counts that merged with the aggravated murder conviction are not convictions, and therefore, we cannot individually review the evidence supporting those findings of guilt. *See, e.g., State v. Williams*, 4th Dist. Scioto No. 11CA3408, 2012-Ohio-4693, ¶ 54; *State v. McKinney*, 10th Dist. Franklin No. 08AP-23, 2008-Ohio-6522, ¶ 39 (only reviewing the sufficiency of the evidence for the crime for which the sentence was imposed and not the counts merged into that crime). Further, our conclusion that Worley's aggravated murder conviction was not against the manifest weight of the evidence necessarily renders any issues with the merged offenses to be harmless error because his final sentence would not be affected by any review of the evidence underlying the merged counts. *State v. Powell*, 49 Ohio St.3d 255, 263, 552 N.E.2d 191 (1990) (even if evidence of kidnapping by restraint was insufficient to support conviction, the fact that the kidnapping by removal was based on sufficient

evidence and merged with the kidnapping by restraint count means any error with the conviction was harmless beyond a reasonable doubt).

**{¶24}** Worley's only remaining argument is that his convictions for having a weapon while under disability and improperly handling a firearm are against the manifest weight of the evidence in light of the credibility of the witnesses. Having found the aggravated murder conviction is not against the manifest weight of the evidence because of those same identified incongruities, we also overrule his arguments against the other convictions. Multiple witnesses saw Worley carrying or using a firearm, and multiple witnesses saw him enter the car with that weapon.[3] Further, even without that testimony, it could be reasonably inferred that Worley improperly possessed the weapon from the fact that he had just shot the victim and had not disposed of the firearm before effectuating his vehicular flight.

**{¶25}** Worley's second assignment of error is overruled. The conviction is affirmed.

It is ordered that appellee recover from appellant costs herein taxed. The court finds there were reasonable grounds for this appeal.

---

[3]Worley presents no arguments, as required pursuant to App.R. 16(A)(7), challenging each individual element of R.C. 2923.16(B). His sole argument is that no one witnessed him in the car and in possession of "a firearm." The state limited its appellate response to Worley's framing of the argument. As such, we cannot reach any conclusions with respect to the sufficiency of the evidence demonstrating whether the firearm was loaded, the second element of the crime. For us to reach any conclusion on that issue, we would deprive the state of any opportunity to respond.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SEAN C. GALLAGHER, JUDGE

EILEEN T. GALLAGHER, P.J., and
PATRICIA ANN BLACKMON, J., CONCUR