[Cite as *State v. Litt*, 2026-Ohio-931.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                                   :

    Plaintiff-Appellee,               :

    v.                                              :

                                  No. 115230

JOHNNY LITT, III,                              :

    Defendant-Appellant.          :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 19, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-25-698913-A

---

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Halie Turigliatti, Assistant Prosecuting Attorneys, *for appellee.*

Susan J. Moran, *for appellant.*

TIMOTHY W. CLARY, J.:

{¶ 1} Defendant-appellant Johnny Litt, III, ("Litt") appeals from his convictions and sentencing following a jury trial. For the following reasons, we affirm.

**Factual and Procedural History**

{¶ 2} On January 25, 2025, Litt allegedly discharged a firearm at the victim's vehicle, and Litt was arrested soon after; the arresting police officers found Litt in possession of 10.31 grams of cocaine.

{¶ 3} On February 4, 2025, a Cuyahoga County Grand Jury indicted Litt on seven counts: Count 1, felonious assault in violation of R.C. 2903.11(A)(2); Count 2, discharge of a firearm on or near prohibited premises in violation of R.C. 2923.162(A)(3); Count 3, having weapons while under disability in violation of R.C. 2923.13(A)(2); Count 4, receiving stolen property in violation of R.C. 2913.51(A); Count 5, trafficking in cocaine in violation of R.C. 2925.03(A)(2); Count 6, possession of cocaine in violation of R.C. 2925.11(A); and Count 7, possessing criminal tools in violation of R.C. 2923.24(A). The indictment included one- and three-year and three-year firearm specifications on Counts 1 and 2, one-year firearm specifications on Counts 5 and 6, and a furthermore clause on Count 7.

{¶ 4} On February 7, 2025, Litt pleaded not guilty to all charges. The case proceeded to a jury trial; Litt voluntarily waived his right to a jury trial on Count 3, having weapons while under disability.

{¶ 5} During trial, the State introduced evidence in support of its claims that on January 25, 2025, Litt exited victim's vehicle at the intersection of East 120th and St. Clair Avenue; discharged a firearm in the direction of victim's vehicle; walked down St. Clair Avenue; hid the firearm in a tree; and entered a Shell gas station approximately ten blocks from where the shooting occurred. The State's evidence

indicated that victim immediately placed a 9-1-1 call at 1:08 a.m., reporting the shooting, identifying Litt as the shooter, and stating he was dressed in a black hoodie with a large white logo on the front of his sweatshirt. The State presented real-time camera footage from street cameras positioned along St. Clair Avenue that showed Litt exiting victim's vehicle, an alleged muzzle flash when he discharged a firearm, and his walk along St. Clair Avenue and through a field before he arrived at a Shell gas station.

{¶ 6} Patrolman Isiah Johnson ("Patrolman Johnson"), responded to victim's 9-1-1 call. Patrolman Johnson worked in tandem with the Real-Time Crime Department of the Division of Police that reviewed the real-time camera recordings on St. Clair Avenue and communicated, via radio, their observations to Patrolman Johnson. Based upon that information, Patrolman Johnson proceeded to the Shell gas station located on St. Clair Avenue.

{¶ 7} At the gas station, Patrolman Johnson encountered an individual matching the description provided by the victim — a male wearing a black hoodie with a large white Adidas logo. Litt did not resist arrest, but he refused to provide his name to Patrolman Johnson; the officer positively identified Litt through a search on his computer. Litt notified the police that he had drugs in his possession. Patrolman Johnson testified that he confiscated one bag that held three smaller baggies of suspected cocaine, one extra-large bag of suspected cocaine, and a scale. Patrolman Johnson testified that "a scale is usually the determining factor that [the suspect] had intentions to prepackage and sell the[ ] narcotics." Tr. 408. Patrolman

Johnson could not recall how much money was found on Litt's person. Patrolman Johnson stated that Litt appeared intoxicated.

{¶ 8} Police Officer Cal Thomas ("Officer Thomas") with the Cleveland Division of Police was also dispatched to locate Litt. Officer Thomas testified that he was guided by the Real-Time Crime Department, who monitored the street cameras, to walk the path Litt had followed prior to his arrest. Officer Thomas's efforts were to locate the firearm that the police assumed Litt had used earlier that evening, but which was not in his possession at the time of his arrest.

{¶ 9} Officer Thomas testified that while following Litt's path, there were certain areas that contained several sets of footprints but at a certain point he followed a single set of footprints. Officer Thomas stated that "a change in stride" in the footprints led him to a less populated area where he found a firearm concealed in a tree, approximately 100 yards from the gas station where Litt was arrested. Officer Thomas testified that he believed the location where he discovered the firearm matched the path walked by Litt prior to arriving at the gas station. Officer Thomas also described the firearm: "It was not covered in any snow, no debris. Almost placed there very gently. It was barely even, like, pressed into the snow, really." Tr. 445. Officer Thomas further testified that the recovered firearm was missing one round, indicating the firearm had been discharged once. The State played Officer Thomas's body-camera footage that showed his discovery of the firearm at 1:49 a.m.

{¶ 10} Detective Susan Deighan ("Detective Deighan") testified that she investigated Litt's case. Detective Deighan stated there was no evidence of drug sales on the night in question, and she did not know how much money was found on Litt's person at the time of his arrest.

{¶ 11} Chelsea Frangapane ("Frangapane"), a forensic scientist for the Cuyahoga County Regional Forensic Science Laboratory, testified that she chemically analyzed the presumed illicit drugs found on Litt to determine their chemical makeup. Frangapane testified that she tested a sample from each of the four bags recovered from Litt and the tested product was determined, within a reasonable degree of scientific certainty, to be cocaine. Further, Frangapane testified that the cocaine weighed 10.31 grams, excluding the bags in which the drugs were packaged, and her lab's scale had a margin of error of .02 grams. Frangapane stated that her report, which was introduced as an exhibit, fairly and accurately depicted the tests she conducted.

{¶ 12} At the close of the State's case, Litt made a Crim.R. 29 motion for acquittal, and the trial court granted the motion on Count 1, felonious assault, Count 4, receiving stolen property, and Count 7, possessing criminal tools. The court denied Litt's renewed motion for acquittal made at the close of his case.

{¶ 13} Defense counsel made the following statement during closing argument:

> But we also know that they have to prove that the cocaine weighed more than 10 grams.

The lab report says 10.34 grams.[1]  And nobody is using the metric system, other than the court system and science.  So that might be — I know in my day-to-day life, I'm not using grams.  But, to give you an idea, a penny, a single United States penny weighs about 2.5 grams.  So the amount in question — the amount in question between the 10 and the bulk amount is a little bit less than a tenth of a penny.

Now, we have testimony that – and you can — this will not go back with you unless you request it, and you can request it.

But this is the cocaine.  And we have indications on these, from little Ts that are marked on some of these, that they were tested.  That some of these were tested.  And the Ts mark what was tested and what was not tested.

I would posit to you — take a look at this — if even a single one of those that was not tested isn't cocaine, and isn't cocaine at a relatively pure amount, that that has failed to meet that weight requirement.

Once again, use your reason and common sense.  This is the gas station at the corner of St. Clair and East 110th, and there's no money.  Is this where you get or have a hundred percent pure cocaine?  This is not the closet behind the valet parking room at Marble Room, this is East 110th and St. Clair.

And this, with the use of reason, common sense, I don't believe counts as sufficient proof for the weight requirement.

And that weight requirement we disagree there is any trafficking, by that weight requirement carries over once again to point — we have conceded from the beginning and conceded from that night, is the cocaine possession.  Possessed cocaine.  He had it in his pocket.

Once again, I don't think, based on reason and common sense, that it is above 10 grams.

Tr. 582-584.  The State did not object to these comments.

---

[1] The lab report states the weight of the cocaine was 10.31 grams.

{¶ 14} The trial court interpreted the above portion of defense counsel's closing statement to suggest the recovered cocaine had to be "pure," which would be inapposite to Ohio law. Thus, the court made the following curative instruction to the jury before the State's final closing statement and over defense counsel's objection:

> So to that end, I'm going to read a curative instruction to you.
>
> Just so you understand what a curative instruction is, think of the word cure. Right? So we're trying to cure a mistake that was made. Right? Rather than starting over, we're going to just try to cure it.
>
> So this is the instruction: Weight is an issue for the factfinder to decide. Remember, the jury is the factfinder. I'm the finder of law, you're the finder of fact.
>
> Weight is an issue for the factfinder to decide. Weight, W-E-I-G-H-T, is an issue for the factfinder to decide.
>
> The law — I'm sorry, not purity. Not purity.
>
> In no place in the law do we require that drugs be pure. And it has nothing to do with any community you live in, east side, west side, suburban, or city center; purity is not an issue. The question is whether or not the drug involved was cocaine or a compound, mixture, preparation or substance containing cocaine.
>
> That's almost straight out of our indictment.

Tr. 601.

{¶ 15} The trial court also included the following as part of the jury instructions:

> Purity is not a legal requirement. Purity is not an element of the offense. Purity or lack thereof is not for you to consider.

Weight is an issue for the factfinder to decide, not purity. The law states that the drug involved was cocaine or a compound, mixture, preparation, or substance containing cocaine. [2]

Tr. 639.

{¶ 16} On May 14, 2025, the jury found Litt guilty of Count 2, discharge of a firearm on or near prohibited premises, and the three-year firearm specification; Count 5, trafficking in cocaine, and the one-year firearm specification; and Count 6, possession of cocaine. The court found Litt guilty of Count 3, having weapons while under disability.

{¶ 17} On the same date as the jury verdict, Litt and his counsel addressed the court, and the court sentenced Litt. The court merged Count 6, possession of cocaine, into Count 5, trafficking, and the State elected to proceed on Count 5. The court sentenced Litt to nine months each on Counts 2, 3, and 5, to be served concurrently with one another. The court also sentenced Litt to three years on Count 2's firearm specification and one year on Count 5's firearm specification, with the firearm specifications to be served prior to and consecutively to the underlying sentences, for an aggregate sentence of four years and nine months.

{¶ 18} On June 12, 2025, Litt filed a notice of appeal, and he now presents three assignments of error:

Assignment of Error 1: The trial court erred by issuing an unsolicited and prejudicial curative instruction which undermined appellant's right to due process as provided in the Fifth and Fourteenth

---

[2] In the written jury instructions provided to the jury during deliberations, the trial court changed the last sentence of the second paragraph to read: "The law states that the drug involved was cocaine." Tr. 649.

Amendments to the United States Constitution and Article 1, Section 16 of the Ohio Constitution.

Assignment of Error 2: The evidence in this case is legally insufficient to justify appellant's convictions, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Constitution of the State of Ohio.

Assignment of Error 3: Appellant's convictions are against the manifest weight of the evidence in violation of his right to due process as provided in the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 16 of the Ohio Constitution.

**Legal Analysis**

**A. Curative Instruction**

{¶ 19} Litt argues that the trial court confused defense counsel's remarks made during closing statement. Specifically, the court misconstrued the argument that the State failed to prove every fragment of the confiscated substance tested positive for cocaine with a claim that the State had to show the cocaine was "pure." Litt also argues that the trial court's curative instruction invaded the province of the jury because it informed the jury not to consider the defendant's claim that the State did not prove all the substances contained in the baggies were cocaine.

{¶ 20} During closing arguments, counsel should be afforded wide latitude to comment about the evidence introduced at trial. *State v. Fussell*, 2006-Ohio-6438, ¶ 32 (8th Dist.), citing *Drake v. Caterpillar Tractor Co.*, 15 Ohio St.3d 346, 347-348 (1984). However, counsel "may not make statements in argument which are obviously erroneous, misleading, or not supported by any evidence." *Id.*

{¶ 21} "Curative instructions have been recognized as an effective means of remedying errors or irregularities that occur during trial." *State v. Williams*, 2010-Ohio-5484, ¶ 21 (8th Dist.), citing *State v. Ghaster*, 2009-Ohio-2134 (8th Dist.), citing *State v. Zuern*, 32 Ohio St.3d 56, 61 (1987). "[A] jury is presumed to follow instructions provided by the trial court, including curative instructions." *Id.*, citing *State v. Henderson*, 39 Ohio St.3d 24, 33 (1988).

{¶ 22} Further, "[a] jury instruction is proper where '(1) the instruction is relevant to the facts of the case; (2) the instruction gives a correct statement of the relevant law; and (3) the instruction is not covered in the general charge to the jury.'" *State v. Walker*, 2012-Ohio-4274, ¶ 53 (8th Dist.), quoting *State v. Kovacic*, 2012-Ohio-219, ¶ 15 (11th Dist.).

{¶ 23} Here, defense counsel provided confusing statements during his closing argument that could have been misunderstood by the jury to suggest the State needed to demonstrate that the cocaine found on Litt was "a hundred percent pure cocaine." Tr. 584. To be found guilty of trafficking cocaine or possessing cocaine, the State must demonstrate that "the drug involved in the violation is cocaine or a compound, mixture, preparation, or substance containing cocaine." R.C. 2925.03(C)(4) and 2925.11(C)(4). The applicable statutes do not reference nor require "pure" cocaine.

{¶ 24} In response to defense counsel's potentially misleading statements, the trial court provided a curative instruction that identified the roles of the jury and the court and explained the law does not necessitate a finding that the confiscated

drugs were "pure." Inclusion of the curative instruction in the jury instructions was proper because it was relevant to the facts, was a correct statement of the applicable law, and was not addressed in the general charge to the jury. Additionally, the curative instruction did not negate Litt's argument that the State did not establish the confiscated drugs weighed at least ten grams.

{¶ 25} For the foregoing reasons, Litt's first assignment of error is overruled.

**B. Sufficiency of the Evidence**

{¶ 26} Initially, we note that in Litt's second and third assignments of error, he challenges the sufficiency of the evidence and the weight of the evidence supporting his convictions in Count 5, trafficking in cocaine, and Count 6, possession of cocaine. For sentencing purposes, Count 6, possession, merged into Count 5, trafficking, and the State elected to proceed with sentencing on Count 5. This court has previously found that with merged offenses, if there is sufficient evidence to support the offense on which the State elected to have the defendant sentenced, the reviewing court need not consider the sufficiency of the evidence or manifest weight of the evidence on the merged counts because any error would constitute harmless error. *State v. Ramos*, 2016-Ohio-7685, ¶ 14 (8th Dist.), citing *State v. Powell*, 49 Ohio St.3d 255, 263 (1990), and *Ramos* at ¶ 15, citing *State v. Worley*, 2016-Ohio-2722, ¶ 23 (8th Dist.). Thus, pursuant to *Ramos*, we will not consider Count 6 in our evaluation of the sufficiency-of-the-evidence and the manifest-weight-of-the-evidence assigned errors.

### 1. Standard of Review

{¶ 27} Where a party challenges the sufficiency of the evidence supporting a conviction, a determination of whether the State has met its burden of production at trial is conducted. *State v. Hunter*, 2006-Ohio-20, ¶ 41 (8th Dist.), citing *State v. Thompkins*, 1997-Ohio-52, ¶ 33. An appellate court reviewing sufficiency of the evidence must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. With a sufficiency inquiry, an appellate court does not review whether the State's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 2009-Ohio-3375, ¶ 25 (8th Dist.), citing *Thompkins* at ¶ 36. A sufficiency-of-the-evidence argument is not a factual determination, but a question of law. *Id.*

{¶ 28} In a sufficiency inquiry, we also assume the State's witnesses testified truthfully and evaluate whether that testimony, along with any other evidence introduced at trial, satisfies each element of the offense. *In re D.R.S.*, 2016-Ohio-3262, ¶ 23 (8th Dist.). The elements of an offense may be proven by direct evidence, circumstantial evidence, or both. *See, e.g., State v. Wells*, 2021-Ohio-2585, ¶ 25 (8th Dist.), citing *State v. Durr*, 58 Ohio St.3d 86 (1991). Circumstantial evidence and direct evidence have the same probative value. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph one of the syllabus.

**2. Analysis**

{¶ 29} The State sought to convict Litt of trafficking cocaine pursuant to R.C. 2925.03(A)(2) that reads, in relevant part:

(A) No person shall knowingly do any of the following:

(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

{¶ 30} Patrolman Johnson confiscated one bag that held three smaller baggies of suspected cocaine, one extra-large bag of suspected cocaine, and a scale. Patrolman Johnson testified that "a scale is usually the determining factor that [the suspect] had intentions to prepackage and sell the[ ] narcotics." Tr. 408. Frangapane, the forensic scientist who analyzed the chemical makeup of the confiscated drugs, testified that the four bags each contained multiple fragments or particles that she determined, within a reasonable level of scientific certainty, consisted of cocaine. Litt did not have a firearm on his possession when arrested, but the evidence indicated that Litt possessed a firearm that he hid minutes prior to his arrest.

{¶ 31} The applicable statute required Litt to knowingly prepare cocaine for shipment or prepare for distribution; the statute did not require Litt to sell the prepared substance. The presence of four separate bags, each containing cocaine fragments, as well as a scale and firearm, allowed a reasonable inference that the drugs were packaged for sale. The jury had an opportunity to view the physical

evidence and consider the State's evidence. And "'[c]ircumstantial evidence has long been used to successfully support drug trafficking convictions.'" *State v. Fleming*, 2022-Ohio-1876, ¶ 29 (2d Dist.), quoting *State v. Batdorf*, 2020-Ohio-4396, ¶ 16 (2d Dist.), citing *State v. Delaney*, 2018-Ohio-727, ¶ 11 (9th Dist.).

{¶ 32} For the foregoing reasons, we find there was sufficient evidence to support Litt's conviction of trafficking in cocaine. Litt's second assignment of error is overruled.

## C. Manifest Weight of the Evidence

{¶ 33} In his third assignment of error, Litt argues his trafficking conviction was against the manifest weight of the evidence.

### 1. Standard of Review

{¶ 34} A manifest-weight challenge questions the credibility of the evidence presented and examines whether the State met its burden of persuasion at trial. *State v. Whitsett*, 2014-Ohio-4933, ¶ 26 (8th Dist.), citing *Thompkins*, 1997-Ohio-52 at ¶ 24; *State v. Bowden*, 2009-Ohio-3598, ¶ 13 (8th Dist.), citing *Thompkins* at ¶ 33. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172 (1st Dist. 1983), paragraph three of the syllabus. When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the court of appeals sits as a "thirteenth juror" and may disagree with

the factfinder's resolution of the conflicting testimony. *Thompkins* at ¶ 25, citing *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). A reversal on the basis that a verdict is against the manifest weight of the evidence is granted "only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin*.

**2. Analysis**

{¶ 35} Litt argues there was no evidence to demonstrate that he was trafficking cocaine. Specifically, Litt argues there was no testimony that a drug deal occurred, that he was found with large sums of money on his person, or that local complaints led to a drug trafficking investigation. The absence of such evidence may be part of the manifest-weight-of-the-evidence analysis, but the jury also considered the remaining evidence including the four separate bags, each containing cocaine fragments, as well as the presence of the scale and firearm on Litt's person.

{¶ 36} Based upon the record before us, we find there was sufficient, competent, credible evidence to support Litt's conviction beyond a reasonable doubt. We are unable to conclude that the jury lost its way and created a manifest injustice. Consequently, we find Litt's conviction is not against the manifest weight of the evidence, and his third assignment of error is overruled.

{¶ 37} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIMOTHY W. CLARY, JUDGE

MICHAEL JOHN RYAN, P.J., and
SEAN C. GALLAGHER, J., CONCUR